Joel Elias DOTY, Appellant,

v.

UNITED STATES of America, Appellee.

Orin Don DOTY, Appellant,

v.

UNITED STATES of America, Appellee.

Paul Edward DOTY, Appellant,

v.

UNITED STATES of America, Appellee.

Sid Irving DOTY, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 15125, 15126, 15129, 15130.

United States Court of Appeals, Eighth Circuit.

Jan. 11, 1955.

J. B. Tietz, Los Angeles, Cal., and Chester A. Bruvold, Minneapolis, Minn., for appellants.

Clifford Janes, Asst. U. S. Atty., St. Paul, Minn. (George E. MacKinnon, U. S. Atty., St. Paul, Minn., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and COLLET, Circuit Judges.

COLLET, Circuit Judge.

The four defendants, Joel Elias Doty, Orin Don Doty, Paul Edward Doty, and Sid Irving Doty were separately indicted for failure to report for military service at the order of their local draft board. Their cases were by agreement consolidated for trial. A jury was waived. All were convicted and sentenced to imprisonment for two years. All four appeal. Their appeals were consolidated. The facts as to all four defendants are substantially the same, with one material exception relating to Joel Elias Doty, to which specific reference will be made.

The defendants are brothers, citizens and residents of Minnesota. They have never voluntarily registered with their

local draft board. April 6, 1951, all were sentenced by the United States District Court in Minnesota for violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq. Joel received a sentence of two years, the other three eighteen months each. All were sent to the federal institution at Ashland, Kentucky. The registrar of the local draft board at Ashland, Kentucky, interrogated each defendant at the prison. Each refused to sign a registration card. The registrar filled out the cards from information obtained from them, signed the cards for each defendant, and forwarded them to the Minnesota local board at the place of defendants' residence. Defendants were all released on parole about May, 1952. Their local draft board mailed questionnaires and other routine documents to them. Defendants ignored all inquiries and directions from their draft board. The only communication from any of them to the board was a letter from Joel, stating that he was on parole and "not subject to the whims of the local board."

Joel was born July 2, 1926. He became 26 years of age July 2, 1952. On June 13, 1952, his local board classified him in Class II–A, on the ground that he was a locomotive engineer. Actually his civilian employment was a locomotive fireman. This deferred classification, continuing at the time of his twenty-sixth birthday, continued his liability for training and service under the Act until his thirty-fifth birthday.[1]

July 29, 1952, Joel's classification was changed to I–A. The other three defendants were classified I–A on that day. Although duly notified by the draft board of their classification, none appealed or made any response to notices or directions from the board. September 16, 1952, they were notified to report for induction October 13, 1952. They did nothing. All four were indicted September 4, 1953, and were tried December 7, 1953. Findings of fact and conclusions of law were made and entered by the trial court February 27, 1954, and sentences were imposed March 5, 1954.

Defendants' first point is that each was in the custody of the prison authorities and not subject to the orders of the draft board, because each was on parole at the time of his order to report for induction. §§ 716a, 716b and 717 of 18 U.S.C.A. [now § 4203, § 4164 and § 4205, respectively] are referred to in support of that position. We are referred to no authorities in support of that theory. Our own research has not produced any support therefor. We deem the point to be without merit.

The records of the local board are said to be "confused and confusing" and fail to support defendants' classification or conviction. The records of a draft board are not required to be kept in the meticulous form of formal court records. The records of the board in this case are adequate and sufficient. The argument is made in this connection that there was no justification in the record for Joel's deferred classification in Class II–A. The record simply states his occupation as "rail". The file contains evidence that Joel's civilian occupation was a locomotive fireman. Upon his allocution he stated that his occupation was locomotive fireman. There is no merit in that argument. Joel says that the local board was "acting out of pique" in giving him the deferred classification, and did so in order that he might be prosecuted for his refusal to comply with the draft board's orders after he became 26 years of age. There is nothing in the record to support that contention. On the contrary, the evidence supported the classification.

1. "* * * Provided further, That persons who are or may be deferred under the provisions of this section shall remain liable for training and service in the Armed Forces or for training in the National Security Training Corps under the provisions of section 4(a) of this Act [section 454(a) of this Appendix] until the thirty-fifth anniversary of the date of their birth." 50 U.S.C.A.Appendix, § 456(h).

■ Defendants contend they were not eligible for service in the armed forces because of their previous conviction. This contention is based upon 50 U.S.C. § 456(m), 50 U.S.C.A.Appendix, § 456 (m):

"(m) No person shall be relieved from training and service under this title [sections 451–454 and 455–471 of this Appendix] by reason of conviction of a criminal offense, except where the offense of which he has been convicted may be punished by death, or by imprisonment for **a** term exceeding one year."

Defendants misinterpret the foregoing language. Persons convicted of an offense which may be punishable by death or by imprisonment for a term exceeding one year are not made ineligible for service under the Act. They may be rejected by the draft board or by the military authorities at the time they report for induction. But their acceptance or rejection rests in the discretion of the draft board or the military authorities. The statute grants such persons no immunity from their obligations under the Act. See United States v. Bouziden, D.C.Okl., 108 F. Supp. 395.

■ Defendants further contend that since army regulations, referred to as "Paragraph 10d of Special Regulations 615–180–1, Department of the Army, dated April 10, 1953," provide that at the time a registrant reports at an induction center for induction, if he has a criminal record of the character specified in 50 U.S.C.A.Appendix, § 456(m), supra, he shall be morally unacceptable for service "unless such disqualification is waived by the respective department," and that since the record shows no such waiver, the defendants should have been acquitted for failure of proof. The mere statement of the contention indicates its answer. Defendants did not report for induction. Until they did so there was no occasion for an exercise of the discretionary power of waiver of their previous criminal record.

■■ Defendants say that their classification was arbitrary and without basis in fact because the evidence before the board showed their previous convictions and hence the board was required to put them in the classification of undesirables, to-wit IV–F. § 456(m), heretofore quoted, makes no such requirement. Whether defendants' previous convictions made them unacceptable for service is a question within the discretionary judgment of the draft board in the first instance and later of the military authorities. Furthermore, there was no appeal from the draft board's classification. Ordinarily a failure to exhaust administrative remedies precludes the raising of a question of the propriety of the draft board's action. There is no justification in this case for relaxing that rule.

■ It is said that the local board had no jurisdiction of defendants because they did not register. The Selective Service Regulations promulgated pursuant to the Act of Congress provide, 32 C.F.R. 1642.31, for registration of persons in custody by certain specified officials. The record shows that each of the defendants was properly registered by such an official. The local board of defendants' residence had jurisdiction.

■ Lastly, it is asserted that the record and files of the draft board were improperly received in evidence because they were not properly identified. The clerk of the local board identified the records and files in question as the record and files of the local board. The clerk was the custodian of those records. They were properly received in evidence.

The judgments are affirmed.