The **UNITED STATES**

v.

**James Alvin BROOKS.**

**Crim. No. 18246.**

United States District Court
W. D. Louisiana,
Shreveport Division.

March 21, 1969.

Edward L. Shaheen, U. S. Atty., Q. L. Stewart, Asst. U. S. Atty., Shreveport, La., for the government.

James R. Malsch, Shreveport, La., court appointed, for defendant.

## OPINION DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND ADJUDGING HIM GUILTY AS CHARGED

DAWKINS, Chief Judge.

Defendant is charged with willful refusal to submit to induction into the military service.[1] Pursuant to Rule 23 of the Federal Rules of Criminal Procedure, he formally waived trial by jury. Upon conclusion of the trial we reserved decision upon defendant's motion for judgment of acquittal.

Defendant does not deny that he refused to be inducted into the military service. As his sole defense, he urges that his induction was invalid because the local Selective Service Board's (Board) refusal to grant him a ministerial exemption was violative of his substantive and procedural due process rights guaranteed him by the Constitution. The substantive violation, says defendant, was the lack of a "basis in fact" to support his final classification of I–A. The procedural violations, says defendant, were two: first, that the Board failed to follow the appropriate procedural requirements of Selective Service regulations; and second, that the Board was in error in refusing to reopen defendant's case to reconsider whether he should be reclassified IV–D (ministerial exemption).

August 1, 1961, defendant submitted to his Local Board No. 74, Beaumont, Texas, a completed classification questionnaire (SSS Form 100). As his occupation, defendant listed part-time construction work and farm work. In the "[o]ther occupational qualifications, including hobbies," blank, he stated "Minister work." In the series entitled "Minister or student preparing for the ministry," defendant stated that he had been a minister of the Jehovah's Witnesses since June 14, 1959; that he had not been formally ordained; and that in preparation for the ministry, he was pursuing a full-time course of instruction at the Theocratic Ministers School in Natchitoches, Louisiana.

September 14, 1961, the Board mailed defendant a notice of classification (SSS Form 110), advising him that he had been classified I–A. Although afforded the right to appeal this classification,[2] defendant did not do so.

January 25, 1964, defendant returned to the Board a current information questionnaire (SSS Form 127) that had been submitted to him. Thereon, he listed as his occupation "kitchen work." Nowhere on the form did he make any mention of ministerial work.

February 4, 1964, the Board mailed to defendant an order requiring him to report February 19, 1964, for an armed forces physical examination. Upon receipt of that order, defendant requested and received a transfer for the examination from the Board in Beaumont, Texas, to Board No. 38 in Natchitoches, Louisiana. Following the examination, defendant received, on or about April 22, 1964, a statement (DD Form 62) notifying him that he had been "found not acceptable for induction under current standards."

In December, 1966, lowering of mental standards for inductees caused re-evaluation of defendant's acceptability for service. January 3, 1967, defendant was mailed a statement (DD Form 62) stating that he had been "found fully acceptable for induction into the armed forces."

---

1. 50 U.S.C.App. § 462(a).

2. 32 C.F.R. § 1626.2.

January 5, 1967, the Board received from defendant a current information questionnaire (SSS Form 127) wherein defendant answered questions concerning his present occupation as follows:

"1. The job I am now working at is (give full title: for example, bricklayer, farmer, teacher, auto mechanic, steel worker. If not employed, so state) *A Minister*

2. I do the following kind of work in my present job. (Be specific. Give a brief statement of your duties.) *Teach the bible, A book study conductor*

3. My employer is *Watch Tower Bible and Tract Society*
(Name of organization or proprietor, not foreman or supervisor, enter 'Self' if self-employed)

(Address of place of employment —Street, or R.F.D. Route, City, and State)

whose business is *Jehovah God, Ministry or preaching work*

4. I have been employed on this job for *2* years and *1* months

5. List any other occupational qualifications including hobbies, you possess *None*"

January 27, 1967, defendant was mailed a notice of classification (SSS Form 110) advising him that he had been reclassified I–A. Thereafter, on February 2, 1967, defendant sent the Board a letter, the text of which is as follows:

"Referring to the notice of right to personal appearance and appeal. I am writing to appeal my case because I am unsatisfied with this classification. I am a full time Minister, and according to law I think I deserve a Minister's classification."

The Board, treating this letter as an appeal of his I–A classification,[3] immediately forwarded his selective service file to the Appeal Board for the Eastern District of Texas. March 1, 1967, the Appeal Board classified defendant I–A.

March 2, 1967, defendant was so advised of his classification and ordered to report for induction on March 16, 1967. As already noted, defendant reported but refused to submit to induction.

## DEFENDANT WAS NOT DENIED SUBSTANTIVE DUE PROCESS OF LAW

In deciding whether defendant's January, 1967, I–A classification was proper, we must recognize that our power of review of the Board's action is "the narrowest known to the law."[4] The Courts do not weigh the evidence nor even apply the "substantial evidence"[5] test. We can only overturn a classification made by a board when there is "no basis in fact"[6] for its determination. Thus, while there must be "some proof that is incompatible with the registrants proof of exemption,"[7] District Courts clearly cannot sit as "super draft boards, substituting [their] judgments on the weight of evidence for those of the designated agencies."[8] And in examining the evidence considered by the Board, we must recognize that "[l]o-

3. *Ibid.*

4. Robertson v. United States, 404 F.2d 1141, 1144 (5 Cir. 1968); Clay v. United States, 397 F.2d 901, 915 (5 Cir. 1968); Matyastik v. United States, 392 F.2d 657, 658 (5 Cir. 1968); Campbell v. United States, 221 F.2d 454 (4 Cir. 1965).

5. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); McCoy v. United States, 403 F.2d 896 (5 Cir. 1968).

6. Wood v. United States, 373 F.2d 894 (5 Cir. 1967), reversed on other grounds 389 U.S. 20, 88 S.Ct. 3, 19 L.Ed.2d 20 (1967); McCoy v. United States, 403 F.2d 896 (5 Cir. 1968); Merritt v. United States, 401 F.2d 768 5 Cir. 1968); Clay v. United States, 397 F.2d 901 (5 Cir. 1968); Matyastik v. United States, 392 F.2d 657, 658 (5 Cir. 1968); Jones v. United States, 387 F.2d 909, 911 (5 Cir. 1967); Greer v. United States, 378 F.2d 931, 933 (5 Cir. 1967).

7. Wood v. United States, 373 F.2d 894 (5 Cir. 1967), reversed on other grounds 389 U.S. 20, 88 S.Ct. 3, 19 L.Ed.2d 20 (1967).

8. *Ibid.*, at 373 F.2d 898, quoting from Witmer v. United States, 348 U.S. 375, 380, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

cal boards are not courts of law and are not bound by traditional rules of evidence; they are given great leeway in hearing and considering a variety of material as evidence."[9]

 We also note that: "the registrant bears the burden of clearly establishing a right to the exemption. * * * The Board has no affirmative duty to ascertain whether or not the registrant qualifies for the exemption."[10]

With the above principles in mind, it is clear that the Board had a "basis in fact" for its classification of defendant as I–A in January of 1967. Since his initial registration with the Board, defendant had indicated his interest in the Jehovah's Witnesses ministry. However, until January 5, 1967, he did not see fit to say that the ministry was his occupation. Rather he continued to list as his occupation such common labor as construction work, farm work, and kitchen work. Notwithstanding his duty to "within ten days after it occurs, report to the local board in writing any fact that might result in the registrant being placed in a different classification * * *,"[11] before January 5, 1967, defendant never mentioned the ministry as his occupation; nor did he appeal his September 14, 1961, I–A classification. When defendant finally, on January 5, 1967, submitted to the Local Board a current information questionnaire wherein he claimed the ministry as his occupation, he enclosed no accompanying affidavits, certificates, or other evidence.

He merely supplied the following supplementary statement: "Teach the bible, A book study conductor."

 In light of previous statements by defendant that his occupation had been various types of common labor, it is easy for us to understand how the Board could have discounted defendant's statements in his January 5, 1967, questionnaire concerning his claim to the ministry. First, it is common knowledge and a judicially recognized fact that under the doctrine of the Jehovah's Witnesses, all members are called ministers.[12] Second, in the January 5, 1967, questionnaire, defendant asserted that he was merely "A book study conductor." Of course, we recognize that the Board's decision must be based on facts presented, not upon arbitrary application of labels.[13] But for a Jehovah's Witness who neither holds the position of "regular pioneer" or "vacation pioneer," the mere assertion of a lesser title accorded him by the church is quite unconvincing.[14]

## DEFENDANT WAS NOT DENIED PROCEDURAL DUE PROCESS OF LAW

Defendant's procedural due process argument is two-pronged: first, he argues that the Local Board violated certain "implicit requirements" of the Selective Service regulations; and second, he argues that the Board erred in not reopening defendant's case following the latter's February 2, 1967, letter to the Board.

9. Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132 (1953).

10. Wood v. United States, 373 F.2d 894, 897 (5 Cir. 1967), reversed on other grounds, 389 U.S. 20, 88 S.Ct. 3, 19 L. Ed.2d 20 (1967).

11. 32 C.F.R. § 1625.1(b).

12. Gonzales v. United States, 348 U.S. 407, 408, 75 S.Ct. 409, 410, 99 L.Ed. 467 (1955); Witmer v. United States, 348 U.S. 375, 382, 75 S.Ct. 392, 396, 99 L.Ed. 428 at n. 4 (1955); United States v. Stidham, 248 F.Supp. 822 (W.D.Mo. 1965).

13. Robertson v. United States, 404 F.2d 1141, 1148 (5 Cir. 1968); Fitts v. United States, 334 F.2d 416 (5 Cir. 1964).

14. McCoy v. United States, 403 F.2d 896, 901 (5 Cir. 1968).
See also United States v. Stidham, 248 F.Supp. 822, 839 at n. 9 (W.D.Mo.1965), which contains a copy of a January 10, 1959, letter from Mr. Hayden Covington, then general counsel for the church, to Lt. Gen. Hershey, Director of the Selective Service System, explaining when the church considers its various members qualified for ministerial exemption.

Defendant's first argument is based upon his contention that, implicit in the regulations, is a requirement that a registrant must be expressly warned that he has the burden of proving his right to an exemption. With this we cannot agree.

 Proceedings before draft boards are not stages in a criminal prosecution, thereby entitling a registrant to all of the procedural safeguards guaranteed by the Constitution.[15] Where procedural requirements are set forth in the Selective Service regulations, they must be strictly followed.[16] This is only fair where the scope of judicial review is so narrowly restricted. However, defendant cites no authority, nor are we able to find any for the proposition that *more* is required of a Local Board.[17] Thus we hold that the regulations do not "implicitly require" that a registrant be warned that he has the burden of proving his exemption.

 Defendant's second argument, that the Local Board improperly refused to reopen his case, is based on his contention that his February 2, 1967, letter to the Local Board amounted to a request to reopen his case.[18] Defendant further argues that when the Board treated this letter as an appeal rather than a request for a reopening, it thereby denied him the opportunity of personal appearance before the Board to offer statements or other evidence pointing out in what respect he believed the Board erred,[19] and at the same time reserve an appeal from the new determination.[20]

We are familiar with the line of jurisprudence liberally construing as requests for reopening, letters by a registrant shortly after his classification.[21] Those cases are inapposite here, however, because they require that a registrant advance *new facts* which, if true, present a *prima facie* case for the requested deferment.[22] Here, rather than presenting

15. McCoy v. United States, 403 F.2d 896, 904 (5 Cir. 1968); Merritt v. United States, 401 F.2d 768 (5 Cir. 1968); United States v. Capson, 347 F.2d 959 (10 Cir. 1965).

16. Robertson v. United States, 404 F.2d 1141 (5 Cir. 1968); Olvera v. United States, 223 F.2d 880 (5 Cir. 1955).

17. *Cf.* 32 C.F.R. § 1622.1(c):
"(c) It is the local board's responsibility to decide, subject to appeal, the class in which each registrant shall be placed. Each registrant will be considered as available for military service until his eligibility for deferment or exemption from military service is clearly established to the satisfaction of the local board. The local board will receive and consider all information, pertinent to the classification of a registrant, presented to it. The mailing by the local board of a Classification Questionnaire (SSS Form 100) to the latest address furnished by a registrant shall be notice to the registrant that unless information is presented to the local board, within the time specified for the return of the questionnaire, which will justify his deferment or exemption from military service the registrant will be classified in Class I-A."

18. 32 C.F.R. § 1625.2.

19. 32 C.F.R. § 1624.2(b).

20. 32 C.F.R. § 1625.13.

21. See, *e.g.*, Townsend v. Zimmerman, 237 F.2d 376 (6 Cir. 1956); Stain v. United States, 235 F.2d 339 (9 Cir. 1956); United States v. Ransom, 223 F.2d 15 (7 Cir. 1955); United States ex rel. Berman v. Craig, 207 F.2d 888 (3 Cir. 1953); United States v. Vincelli, 215 F.2d 210 (2 Cir. 1954) reh. den. 216 F.2d 681 (2 Cir. 1954); United States v. Zieber, 161 F.2d 90 (3 Cir. 1947); United States v. Longworth, 269 F.Supp. 971 (S.D. Ohio 1967); and United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y.1966).

22. See note 21, *supra. Cf.* 32 C.F.R. § 1625.2, which provides:
"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting *facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification*; * * *." (Emphasis added.)

new facts, defendant simply reiterated his bare, unsupported assertions that he was a minister and thus deserved a minister's exemption. We therefore, think that the Board acted reasonably in treating defendant's letter as an appeal, especially since he stated in his letter that

"Referring to the notice of right to personal appearance and appeal. I am writing to appeal my case because I am unsatisfied with this classification."

Accordingly, upon review of the facts of this case and consideration of the law applicable thereto, the Court denies defendant's motion for judgment of acquittal and adjudges him guilty as charged.

Although the constitutional questions discussed above were the only points raised in the respective briefs, the evidence adduced at the trial clearly shows beyond a reasonable doubt, even if the Court were to go behind the documents contained in defendant's draft board file, that he would not be entitled to a ministerial exemption.